Good morning, Your Honors. In this case, the petitioner advanced three different grounds for his assignment claim. First, I would like to address the petitioner's assignment claim relating to his participation in the pro-democracy movement in 1989. The BIA did not seem to have found my client to be incredible in this claim, but nevertheless the BIA denied my client's assignment application based upon its finding that the treatment petitioner received in 1989 did not rise to the level of persecution. The record reflects that the petitioner was detained for five months for his role in the pro-democracy movement in 1989. This court has consistently held that confinement and detention may constitute persecution. In cases where the court found no past persecution based upon confinement or detention alone involves where the length of the detention is significantly shorter than the five month period that we see in this case. Counsel, let me ask you a question though. The IJA found your client to have made an adverse credibility finding and in large part that was based on the fact that your client didn't mention the forced sterilization in the asylum application. Now was there ever any opportunity given to explain on the record why your client didn't mention the forced sterilization in the application? No, Your Honor. Actually, the IJA did not base his adverse credibility upon my client's failure to mention the sterilization. It's the BIA. The only reason that the IJA identified to support his adverse credibility finding is the reliance upon a country condition. Okay, so the BIA found that. Did the BIA give you an opportunity to explain why it wasn't included and correspondingly why wasn't it included? Definitely not, Your Honor. That's why we raised the issue that my client's due process rights might have been violated because my client was not put on notice to present any evidence or to explain why he He asked to be given an opportunity to explain that and he was not. That's your argument? That's correct, Your Honor. If that forms the only basis to support an adverse credibility finding. Let me ask you a question about the 1989 participation in the pro-democracy movement. The BIA says, you've probably read this more times than I have, even assuming the veracity of his claim. So they say, okay, we'll give you the truth of the claim that he was detained following the 1989 participation and that would be for five months. Then they say, there is no indication that he had any further problems or that he was persecuted in the PRC in light of his political views during the several years he continued to live in his homeland before coming to the United States. On this record, he has not established a well-founded fear of persecution. So I translate that to mean, even if we assume that he showed past persecution because he of future persecution. So past, yes, but future, no, he loses. Your answer to that is what? Well, actually, that's a distortion of record on the part of the BIA. The record clearly reflects that my client, the petitioner, continued to support an underground pro-democracy organization financially. And the Chinese authority came to his house to arrest him when his connection with the organization came to light. So therefore, the BIA simply just distorted the record in saying that he experienced no further problem after the 1989 and before his departure from his home country, and which is actually is on page 66 of the administrative record, and 940. The government was going to arrest me, yeah. And in September 1992, I made a way of it, and then you discernible. And this person is the one who approved a democratical movement. And another problem with the BIA's analysis is if the BIA believes that my petitioner suffered past persecution, then petitioner is entitled to a presumption of well-founded fear of persecution. And then the burden shifts to the government to show a fundamental change of circumstances to rebut that presumption. And based upon the country condition in record, China remains a repressive country as far as the political opinion is concerned. So therefore, that presumption has not been rebutted. Actually, the government made no attempt to rebut that presumption. Let me ask you this, if I may. The forced sterilization, I'm now taking your client's testimony as true, took place in 1984. He shows up in Guam 14 years later in 1998. He files a petition for, he files for asylum at that time. At that time, he mentions only the political basis for asylum. He then gets a new counsel in 2002, four years after arriving and claiming for asylum based on the political basis. In 2002, with the assistance of the new counsel, he adds the claim about forced sterilization. Now, assuming for the moment that we're relying only on the forced sterilization for the basis for asylum, it seems to me that a plausible inference from this record is that he did not come to Guam because of the forced sterilization, and that he mentions the forced sterilization only after the new lawyer gets involved and asks him, were you ever forcibly sterilized or was your wife or whatever? He says yes, and it's then added. Does it make any difference to your claim, if it is true, that your client did not come to the United States because of the forced sterilization, but rather came for some other reason? It doesn't matter what his motivation was when he entered this country, Your Honor, so long as he was forced to undergo a sterilization procedure. So even if his motivation, his subjective motivation, was economic refugee status, that is to say he wanted to earn some more money so he could perhaps send it back home to the family, but even if that was his sole motivation, the fact that he was involuntarily sterilized is sufficient to give him asylum? Yes, Your Honor, according to the statutory definition of refugee, and also according to the string of case law in this case, if the court accepts as a fact that the petitioner underwent involuntary sterilization, then he automatically qualifies for asylum. Did your client present any evidence of actual sterilization, a sense of physical evidence, doctor's examination or whatever? Yes, Your Honor, the respondent did provide, submit into record a doctor report, a medical report, saying that he did undergo a vasectomy procedure, and also based on the scar, and because the scar was very vague, so the operation took place sometime in the past. So we know the sterilization took place, and then the only issue is was it involuntary? Whether or not it was forced. So when was your original application filed? I believe it was 1998, shortly after he came to Washington. Because the law was pretty unsettled between what the BIA was doing and what Congress was doing in those years in terms of whether it's an automatic eligibility for asylum or what exactly had to be proven. Yes, Your Honor. And also in my experience, I've met a lot of clients who deliberately left out the sterilization part. The reason why is that because there was a cap, and since it's so easy to come forward with evidence to show that the passport persecution under the coercive population control program, usually the judge, if you present the judge with two alternative grants for asylum, the judge usually will grant on the coercive population control grant. Therefore, the respondent only can, all respondent can get is a conditional grant, and the respondent has to wait several years before, the petitioner would be forced to wait several years before he can petition his relatives. So you have to wait longer under this forced sterilization prong than you do under, say, political persecution? Yes, Your Honor, a lot longer. Why is that? Yeah, because under the law, previous law, the government, only 1,000 asylum can be granted under the coercive population control program. Oh, I see. Has that 1,000 cap now been lifted? Yeah, now it has been lifted, but it was only lifted last year. Last year? Yeah, by the VOID Act. So it could have been a strategic decision by counsel. It could be, Your Honor. But as I said, the problem is that the petitioner was not given an opportunity to explain. Oh, I noticed that my time is running out. You're over your time, so we will hear from the government for now. Thank you. May it please the Court, Joan Smiley from the Department of Justice, here on behalf of the Attorney General. Substantial evidence in this case supports the denial of asylum as well as the adverse credibility finding that was made by the immigration judge and affirmed by the Board. Here, that adverse credibility finding is supported by three independent and specific and cogent grounds that were discussed by the immigration judge and then again by the Board. The first is that with respect to petitioner's claim of a forced vasectomy in 1984, the Board found, as Judge Fletcher noted, the vasectomy was never mentioned in his asylum application, which was filed in 1998. It was never mentioned in his asylum interview in June of 2001 or in a brief that was filed in immigration court in January of 2002, and he was represented by counsel throughout this time. In addition, at the hearing, Mr. Liu testified that his asylum application and accompanying statement were accurate and complete. That's at pages 48 to 52 of the record. The Board found that it was reasonable to expect that an event that went to the heart of his asylum claim would have been raised when he first requested asylum in 1998. Instead, it was first raised four years later in 2002. There's one problem in that the IJ appears to have discounted his claim based on the background information in the country reports that China does not use force or compulsion to obtain the consent of its inhabitants to undergo a population control practice. We have a case that Zhen versus Ashcroft, I'm sure you're familiar with it, that says that a country report can give you a background information, but it can't be used to impeach the specific testimony of an applicant petitioner.  Well, I believe you're referring to the judge's comments at pages 32 and 33 of the record, where he found that the record did not establish that petitioner was forced to even have a vasectomy. Well, I'm referring to page 75. Then with respect to the population control vasectomy, the State Department report seemed to indicate that force was never used with respect to vasectomy or abortions, but simply sanctions are used. So he's using the control report to impeach the individual testimony, and Zhen seems to say you can't do that. Well, but I think the judge also found that not only the country report, but the record and the lack of evidence to show that he was forced to have a vasectomy led to the adverse credibility finding. The second ground for the finding concerning the 1989 detention after a pro-democracy demonstration, as the administrative authorities here found, there was no indication that he had any further problems or was persecuted in any way. You know, I have to tell you, it's mind-boggling to me that you can minimize, and I'm not criticizing you personally, that you can minimize a five-month detention and say, well, all they did was detain him for five months. They didn't beat him up. But that's a five-month detention because of political opinion. I mean, on the face of it, doesn't that compel the conclusion that that's persecution? Well, Your Honor, I'm not attempting to minimize it. I know you're not. Not you, the immigration judge. Nor were the administrative authorities, I don't believe. I think the point that they were making was that from 1989 to 1993, he was not bothered in any way. But that's contradicted by the record, by his testimony and by his declaration. He was bothered. He was visited by officials. He was threatened. He had to leave and go to Saipan. It's absolutely contradicted by the record, that finding. I don't believe that he testified that he went to Saipan to avoid any persecution. That's in his original asylum application. He says after they had taken him to a torture camp, severely tortured, his friend was. And then he says he was informed by his friends to hide because the government would get my name from him soon. He hid in the aunt's house. The central investigation officers came to my house to arrest me. My wife lied to them that I went overseas. My relatives helped me find a job in Saipan. That's attached to the original asylum application. The I.J. just completely ignored that and said, no, there's no subsequent thing after the five-month detention. You have to at least deal with it. It's in the record. The I.J. at least dealt with that comment and then said why it doesn't belie her finding. Well, I think the finding, it was noted that he testified that he was questioned occasionally while he was detained. The record does indicate, as Your Honor has stated. However, as the judge pointed out, he left for Saipan with a passport and visa. The government did not try to stop him in any way. And, again, he had no problems. He returned to China in May of 1993 for four months, and he had no problems when he was there. Big country, a lot of people. That's right, and it's still a big country with a lot of people. So if he were to return, the same would apply. Well, the BIA statement that nothing happened to him, as Judge Wardlaw suggested, seems to be contradicted by the record. I'm not sure the BIA read the record. Here I believe the board was concerned that based on the totality of the record that was indicated here and his testimony and all the evidence was submitted, he just simply didn't establish that the treatment in 1989, that is the five-month detention, constituted persecution such that he would have a well-founded fear of persecution if he returned. Again, to restate my sense of this, locking somebody up for five months, if that happened in the United States, for example, or any of the other Western civilization states, people would go crazy locking up somebody for five months. And so to try to hear that that's not some kind of persecution is very difficult for me. And then he's entitled to a presumption, and nobody seems to cope with the presumption in his favor. Presumption that he's going to have trouble if we send him back, and they just seem to sort of wash over that. Well, I don't agree that they washed over it. I think they delved into the reasons why he appeared to not be credible. The board added to the reasons that had been given by the immigration judge. So they just quote him as saying not much happened during his detention. Good. Well, that was his testimony. They asked him, and he said nothing other than the occasional question. Yeah, what happened while you were in supermax for five months? Nothing. That was in isolation. Nothing. Well, in many of the Ninth Circuit cases that have dealt with detention, there is often other activity that goes on. Is there any case that says a five-month detention without anything else doesn't necessarily mean it's persecution? Well, no. But I think when the cases are viewed on a case-by-case basis, we have seen the detention accompanied by egregious torture, rapes, things of that nature. I don't think that's our standard, that that has to happen. No, it doesn't have to. That sounds like a detention plus standard. Yeah. Well, persecution, as this court has defined, is treatment that is offensive and rises to a level that is different from the general populace that might be detained. Things of that sort happen in some countries, including China, as we have seen. Yeah, and that's why we give asylum to people to whom that happens for political reasons. Somebody believes in a different form of government, they lock them up. That's political prisoner stuff. That's really what asylum was aimed at. Well, again, on the issue of whether this was for a political reason, the immigration judge found that the evidence indicated that the demonstration in 1989 was primarily by students. I don't understand that distinction. If a student makes a stink about something as compared to somebody else, there's a difference? Students have a lesser right to complain about the politics of their country? No, but it indicated that the judge felt that since this was a 33-year-old working man, that it might not have been likely that he even participated in the demonstration. Yeah, you're back to credibility on that point. Pardon me? You're back to credibility when you move back. Yes, well, there are, as I said at the beginning, there are three independent reasons for the adverse credibility. Let me ask you this. Do you agree with the statement by opposing counsel that his subjective motivation for coming to Guam is irrelevant when we're talking about his vasectomy? That is to say, even if when he came to the United States, he came entirely for – for the moment, I'm ignoring the political question, the political persecution. Even if he came to this country entirely for economic motives, if he had been forcibly sterilized 14 years before his arrival, that's enough? No, I don't agree with that. And why not? There's nothing in the law that suggests that that would be enough. But as I understand the law, as he describes it to me, the fact of forced sterilization is enough, period, even though you might have some other motivation for coming to this country. What in the statute leads you to a different reason? Well, the statute I believe that counsel was referring to possibly is 1101A42, which provides that an individual who is forced to have an abortion or undergo involuntary sterilization or has been persecuted for resisting coercive population control shall be deemed to have been persecuted on account of political opinion. Right. However, the next question is, do they have a well-founded fear of persecution if they return? Oh, but then that can't be right, meaning if you've already been sterilized, I doubt they're going to sterilize you again. Well, the statute goes on to say that one who has a well-founded fear that they will be forced to undergo either the abortion or sterilization or persecuted for failure to undergo that shall be deemed to have a well-founded fear of persecution based on political opinion. Or subject to persecution for such failure. And we know from, first of all, we have case law that says that just because you've been, I mean, nobody would be eligible under this statute if you said, okay, you've had a forced abortion or forced sterilization. Therefore, you have no well-founded fear that you're going to have another one because it's already happened to you. What they're saying is other persecution, meaning fines, your property, not being able to get a job because it's the only place in town where you can get a job, it's owned by the government, and you violated their policy. But on that subject, the IJ also made a finding that there is no question that the required force was not used with respect to the vasectomy. I completely don't understand the basis for that finding. Again, the immigration judge evaluated the record and determined that it did not establish that he was forced to have a vasectomy. His only testimony, I believe on that point, is in a very vague manner. He suggested that someone came to his house and that if he didn't have the vasectomy, they would have done harm to the house. And they partially shattered the door, the windows of his house, and that's also supported in the country reports that that's what they do if you don't conform to the Carissa family population policy in China. Again, if he was persecuted in the past on account of this vasectomy, which the judge did not find, it still would not establish that there was a well-founded fear of persecution on that basis. It doesn't have to at that point. When he returned. It's automatic at that point. Well, but for asylum, that showing is required. I think you have a misunderstanding of the law on that particular point, but you're well over your time. So I think we'll just see if he has any other questions. OK. We'll submit that case. And we will take up. This is I'm probably mispronouncing it. Wasey Lynn versus Gonzalez. It's 0571909. We have two limbs on the docket today.
judges: Trott Wardlaw W. Fletcher